**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 02 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAHL TUG & BARGE INC, a Washington corporation, | No. 10-36170 |
| Plaintiff - Appellee, | D.C. No. 2:09-cv-00756-JCC |
| v. | MEMORANDUM[*] |
| CASHMAN EQUIPMENT CORPORATION, a Massachusetts corporation, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted August 29, 2011
Seattle, Washington

Before: HAWKINS, McKEOWN, and BEA, Circuit Judges.

Cashman Equipment Corporation ("Cashman") appeals the award of

outstanding charter fees and interest that the district court found Cashman incurred

from April 16, 2009 to May 26, 2009. Because the parties are familiar with the

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

facts of the case, we repeat them here only as necessary to explain our decision. We affirm.[1]

The fees were incurred by Cashman pursuant to Cashman's charter of the vessel *Triton* from Dahl Tug. The contract called for Cashman to pay $6,000 for each day the vessel was "on hire." The vessel was delayed in port in Amelia, Louisiana while the parties negotiated for the sale of the vessel and then delayed again while Dahl prepared the vessel to leave port after the purchase negotiations ended. The district court found that these interruptions in service "were *not* caused solely by Dahl's fault" and therefore did not relieve Cashman of its obligation to pay hire.

This court "review[s] de novo an admiralty court's conclusions of law, and review[s] for clear error an admiralty court's findings of fact." *Crowley Marine Servs., Inc. v. Maritrans, Inc.*, 530 F.3d 1169, 1173 (9th Cir. 2008) (internal citations omitted). On clear error, we will reverse only if the district court's conclusions are "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc)).

---

[1] This case arises under our federal admiralty jurisdiction, *see* 28 U.S.C. § 1332–1333, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Under that standard, we affirm the district court's findings of fact. Emails sent by the owner of Dahl Tug to Cashman state the vessel would be back "on hire" when the repairs were completed and the vessel was ready to return to service. This correspondence supports the district court's conclusion that Dahl did not intend to waive hire fees for the entire period of the vessel's inspection, but rather intended the waiver to last until the tug was ready to set sail again. Cashman contends that these emails from Dahl were mere puffery during the period of negotiations, but Cashman points to no specific record evidence that would allow us to overturn the district court's contrary finding under the standard quoted from *Hinkson*, *supra*.

The district court's conclusion that Dahl prosecuted the voyage with reasonable dispatch after the purchase negotiations broke down is similarly sufficiently supported by the record. Fred Dahl testified that, from May 6 to 26, 2009, the vessel's departure was delayed because Dahl Tug had to prepare the *Triton* following Cashman's disassembly of the ship during purchase inspections. The district court found the delay in manning the vessel for its return not to be unreasonable in light of the conflicting messages Cashman had given to Dahl and the fact that Cashman hired away the vessel's captain when the *Triton* was nearly

3

ready to leave Louisiana. These factual findings by the district court do not provide a basis for reversal under said *Hinkson* standard.

Finally, the district court's legal interpretation of the charter party was correct. The parties agreed in writing that Dahl would not provide an absolute warranty of seaworthiness. Instead, as the district court properly held, Dahl had to exercise only "due diligence" in maintaining the vessel. The charter party also provided that hire would be suspended only as a result of breakdowns or interruptions in service caused solely by Dahl's fault. The district court thus correctly concluded that hire continued during disruptions in service for which Cashman was partially or wholly responsible.

For the foregoing reasons, the district court's decision is **AFFIRMED**.